IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANNA N. HOLLINGER, | ) | CASE NO. 1:17 CV 2505 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Dianna N. Hollinger under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB").[2] For the reasons set forth below, I affirm the Commissioner's no disability finding.

## Analysis

Hollinger asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hollinger presents the following issues for judicial review:

- Whether the ALJ violated the treating physician rule where two treating physicians found limitations inconsistent with an ability to work and the ALJ failed to follow Social Security's own regulations for the evaluation of treating physician opinion.

---

[1] ECF No. 14. The parties have consented to my exercise of jurisdiction.
[2] ECF No. 1.

- Whether the ALJ erred in his evaluation of Hollinger's statements about her symptoms and limitations, where he overstated Hollinger's daily activities and travel to Panama to see her family.

**A.     Treating source opinions**

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[3] emphasized that the regulations require two distinct analyses in evaluating the opinions of treating sources.[4] The *Gayheart* decision directed that the ALJ must first determine if the opinion must receive controlling weight as well-supported by clinical and laboratory techniques and as not inconsistent with other evidence in the administrative record.[5] If the ALJ decides not to give the opinion controlling weight, then a rebuttable presumption exists that the treating physician's opinion should receive great deference.[6] This presumption may be rebutted by application of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[7] The Court cautioned against collapsing these two distinct analyses into one.[8]

Despite the seemingly clear mandate of *Gayheart*, the Sixth Circuit in later decisions has adopted an approach that permits these two separate analyses to be merged into one so long as the ALJ states "good reasons" for the weight assigned applying the regulatory

---

[3] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[4] *Id.* at 375-76.
[5] *Id.* at 376.
[6] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).
[7] *Gayheart*, 710 F.3d at 376.
[8] *Id.*

factors governing each analytical step.⁹ Also, despite the reality that a unified statement of these "good reasons" greatly enhances meaningful judicial review,¹⁰ some authority exists for looking outside the unified statement for analysis of the weight assigned to a treating source's opinion.¹¹ Going beyond the reasons stated in the unified statement takes the Court in the hazy gray area where the sirens of *de novo* review and *post hoc* rationalization reside. A reviewing district court must avoid both.

An ALJ cannot avoid reversal by merely citing exhibits in the record that might support her findings without discussing the content of those exhibits and explaining how that content provides support.¹² Nor can counsel for the Commissioner save a decision from reversal by citing to evidence in the record not cited and adequately discussed by the ALJ.¹³ It is for the ALJ, not the court or Commissioner's counsel, to "build a logical bridge from the evidence to the conclusion."¹⁴ "Put simply, . . . there must be some effort . . . to explain why it is the treating physician's conclusion that gets the short end of the stick."¹⁵

---

⁹ *E.g., Biestek v. Comm. of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).
¹⁰ *Smith v. Comm. of Soc. Sec.*, No. 5:13cv870, 2104WL1944247, at **7-8 (N.D. Ohio May 14, 2014).
¹¹ *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001).
¹² *Smith v. Comm'r of Soc. Sec.*, No. 5:13 CV 870, 2104 WL 1944247, at *7 (N.D. Ohio May 14, 2014).
¹³ *Sharp v. Comm'r of Soc. Sec.*, No. 1:14-cv-523, 2015 WL 3545251 (S.D. Ohio June 4, 2015) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted by* 2015 WL 3952331 (S.D. Ohio June 29, 2015).
¹⁴ *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, at *8 (S.D. Ohio March 5, 2014).
¹⁵ *Friend* v. *Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

The Sixth Circuit has identified certain breaches of the treating source rules as grounds for reversal and remand, including:

- the failure to mention and consider the opinion of a treating source;[16]

- the rejection or discounting of the weight of a treating source without assigning weight;[17]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining);[18] and

- the elevation of the opinion of a non-examining source over that of a treating source if the non-examining source has not reviewed the opinion of the treating source.[19]

The Sixth Circuit expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[20] Specifically, *Blakley v. Commissioner of Social Security*[21] concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(c)(2) as harmless error."[22] Harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion at issue is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or

---

[16] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-08 (6th Cir. 2009).
[17] *Id.* at 408.
[18] *Id.*
[19] *Id.* at 409.
[20] *Id.* at 409-10.
[21] *Id.* at 399.
[22] *Id.* at 410.

4

makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[23]

With these principles in mind, I turn to the treatment of the two treating sources' opinions.

*1.    Dr. Tucker*

Dr. Tucker issued three opinions regarding Hollinger's health conditions:

1) June 5, 2008: This opinion discusses the nature of Hollinger's impairment and her worsening pain, and states that no further treatment would be helpful. But the only limitation identified by Dr. Tucker is that "maybe [Hollinger] could be evaluated for a sit-down type job."[24]

2) February 9, 2010: This opinion states that Hollinger cannot sit for prolonged periods of time and that sitting aggravates bowel urgency. This letter was written regarding accommodations Hollinger needed during a flight to Panama.[25]

3) December 27, 2010: This opinion references abdominal pain but includes no discussion of any limitations.[26]

Regarding Dr. Tucker's 2008 opinion, the ALJ assigned some weight to his opinion that Hollinger could perform a sit-down type job. He gave the following reasons in support: the record shows Hollinger is capable of more than sedentary work; Hollinger continued to drive and performed other activities of daily living; and Hollinger was capable of independent personal care.[27] The ALJ assigned little weight to Dr. Tucker's statement that

---

[23] *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).
[24] ECF No. 11, Transcript ("Tr.") at 648.
[25] *Id.* at 951.
[26] *Id.* at 1036.
[27] *Id.* at 1526.

5

Hollinger was headed towards disability, and supported the weight assigned with the reasons that this statement was speculative, was a determination reserved for the Commissioner, and did not impose any functional limitations.[28]

The ALJ assigned little weight to Dr. Tucker's February 2010 opinion that Hollinger could not sit for prolonged periods of time. He gave the following reasons for the weight assigned: Hollinger had traveled to Panama before her last surgery without excuse; Hollinger sat through movies at the movie theater and engaged in other activities of daily living; the record contained no consistent or routine reports of bowel and bladder urgency; and the record contained subsequent reports that Hollinger's bowel and bladder issues had been resolved.[29]

The ALJ assigned some weight to Dr. Tucker's December 2010 opinion and gave the following reasons for doing so: Dr. Tucker's comment that Hollinger would have bowel problems going forward was speculative; Hollinger did not indicate at the time a significant change in bowel habits or inability to engage in daily activities; Hollinger was not taking any medications for bowel incontinence or wearing protective undergarments; radiographic evidence one month before the date last insured did not document significant complications or impairments; and Hollinger reported no residual symptoms from abdominal problems.[30]

---

[28] *Id.*
[29] *Id.* at 1529.
[30] *Id.* at 1530.

The ALJ properly recognized Dr. Tucker as a treating source.[31] The only thing closely approximating a functional limitation in these three opinions is Dr. Tucker's statement that Hollinger "maybe . . . could be evaluated for a sit-down type job," but even that is speculative. And the ALJ gave good reasons for the weight assigned. Under the law of this circuit, I cannot find any error with the weight assigned to Dr. Tucker's conclusory opinions. I therefore affirm the ALJ's findings regarding Dr. Tucker's opinions.

*2. Dr. Kiehm*

Dr. Kiehm also issued three opinions in this case:

1) January 9, 2008: Hollinger needed a sit/stand option and could not be in one position for long periods of time. She could work four hours per day while doing physical therapy, with reevaluation to occur after physical therapy.[32]

2) January 16, 2008: Dr. Kiehm released Hollinger to work with restrictions that she could not do any prolonged sitting or standing.[33]

3) March 12, 2008: Dr Kiehm set out a plan for further testing and treatment and opined that Hollinger cannot sit or stand for a long period of time.[34]

The ALJ assigned some weight to each of Dr. Kiehm's opinions.[35] Regarding the January 16, 2008 opinion that Hollinger could not sit or stand for prolonged periods of time, the ALJ noted that Dr. Kiehm failed to define "prolonged" and Hollinger remained

---

[31] *Id.*
[32] *Id.* at 529.
[33] *Id.* at 495.
[34] *Id.* at 528.
[35] *Id.* at 1524-25.

7

capable of sitting to drive a car and attending movies.[36] With respect to the January 9, 2008 and March 12, 2008 opinions, the ALJ cited as reasons for the weight assigned the fact that Dr. Kiehm rendered these two opinions during Hollinger's recovery period from surgery, and, therefore, they were not indicative of permanent limitation.[37] Significantly, the ALJ found the record supported Dr. Kiehm's opinions *at the time they were made*, but found additional record evidence supported greater physical functioning.[38]

The ALJ failed to recognize Dr. Kiehm, implicitly or explicitly, as a treating source. Unlike Dr. Tucker, Dr. Kiehm included some functional limitations in these opinions, making them credible. But the ALJ's error in failing to identify Dr. Kiehm as a treating source is harmless, as the goal of the treating source regulation is satisfied despite the ALJ's non-compliance. The ALJ found that Dr. Kiehm's opinions reflected Hollinger's status during her recovery period but concluded there was no evidence Dr. Kiehm intended for these limitations to be permanent. [39]

In contrast, state agency reviewing physicians issued opinions in May and October 2010 and reviewed the record evidence post-dating Hollinger's recovery period as part of their analysis.[40] Significantly, the ALJ found Hollinger to be more limited in her abilities than the state agency sources found; specifically, Hollinger "would require additional

---

[36] *Id.* at 1524.
[37] *Id.* at 1524-25.
[38] *Id.*
[39] *Id.* at 1524.
[40] *Id.* at 903-10, 1019.

8

occasional postural limitations and her conditions and symptoms warrant no more than occasional exposure to hazards."[41] The ALJ, therefore, gave greater weight to the earlier physical assessments provided by the state agency sources.[42] Given these facts, I affirm the weight assigned to Dr. Kiehm's opinions.

**B.    Evaluation of subjective complaints**

As the Social Security Administration has recognized in a policy interpretation ruling on evaluating symptoms in disability claims,[43] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms will be considered with other relevant evidence in deciding disability.[44]  The regulations make the same point.[45]

The regulations also set forth factors that the ALJ should consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.  These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[46]

---

[41] *Id.* at 1529-30.
[42] *Id.*
[43] Social Security Administration, Social Security Ruling ("SSR") 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017).
[44] *Id.* at *6.
[45] 20 C.F.R. § 416.929(c)(2).  The regulations governing supplemental security income and disability insurance benefits are substantially similar and may be used interchangeably.
[46] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

Importantly, evaluation of subjective symptoms is not an assessment of the claimant's character or truthfulness.[47] Instead, the ALJ's examination must focus on "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the [claimant]'s symptoms and given the [ALJ]'s evaluation of the [claimant]'s symptoms, whether the intensity and persistence of the symptoms limit the [claimant]'s ability to perform work-related activities . . . ."[48] The Social Security Ruling makes clear that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[49]

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. A court may not disturb the ALJ's "analysis and the conclusions drawn from it – formerly termed a credibility determination –" absent compelling reason.[50]

Hollinger argues the ALJ erred in evaluating Hollinger's statements about her symptoms and limitations and overstated her activities of daily living.[51] Hollinger

---

[47] SSR 16-3p at *11.
[48] *Id.*
[49] SSR 16-3p at *10.
[50] *Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 WL 2437560, at *9 (E.D. Mich. May 8, 2018) (citing *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)), *report and recommendation adopted by* 2018 WL 2431689 (E.D. Mich. May 30, 2018).
[51] ECF No. 17 at 14-18.

especially takes exception to the ALJ's references to her going to the movies.[52] Hollinger's briefs essentially ask the Court to reweigh the evidence, which it may not do. The ALJ, over the course of approximately fifteen pages, went through the evidence relevant to the regulatory factors, including activities of daily living and course of treatment, and supported his findings with citations to evidence in the record.[53] While the ALJ's reference to Hollinger's movie going does not reflect that this was a single occurrence and that Hollinger experienced leg pain during the film, that was one reason among many the ALJ gave in support of his findings. Under the deferential standard afforded to the ALJ's evaluation of subjective symptoms, the ALJ's determination must be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Hollinger had no disability. Accordingly, the decision of the Commissioner denying Hollinger disability insurance benefits is affirmed.

IT IS SO ORDERED.

Dated: March 22, 2019        s/ William H. Baughman, Jr.
                             United States Magistrate Judge

---

[52] *Id.* at 10, 16.
[53] Tr. at 1515-1531.